IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-308

 No. COA20-644

 Filed 6 July 2021

 Burke County, No. 18 CRS 341

 STATE OF NORTH CAROLINA

 v.

 JOSHUA ARRON GIBSON, Defendant.

 Appeal by Defendant from judgment entered on 18 February 2020 by Judge

 Steven Warren in Burke County Superior Court. Heard in the Court of Appeals 28

 April 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Elizabeth B.
 Jenkins, for the State.

 Gilda C. Rodriguez for Defendant-Appellant.

 JACKSON, Judge.

¶1 Joshua Gibson (“Defendant”) argues that the trial court erred when it (1)

 denied Defendant’s motion to dismiss and (2) ordered payment of attorney’s fees

 without affording Defendant an opportunity to be heard. We disagree and find no

 error in the proceedings below.

 I. Facts and Procedural Background

¶2 On 3 May 2017, Kress Berry (“Mr. Berry”), a financial services representative,
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 operated the drive through lanes of a State Employees’ Credit Union branch

 (“SECU”). During Mr. Berry’s shift, a car pulled into the drive-through lane closest

 to him—placing the car and Mr. Berry approximately within 10 to 12 feet of each

 other. The individual sitting on the rear passenger side rolled his window down and

 submitted a check, driver’s license, and social security card through the SECU tube

 system.

¶3 Upon receiving the check and identification documents, Mr. Berry confirmed

 that the driver’s license, belonging to Defendant, matched the individual who was in

 the car. Mr. Berry, however, became suspicious of the check which he believed “didn’t

 feel quite right.” Mr. Berry also noticed that the writing on different parts of the

 check did not match, prompting Mr. Berry to contact Patricia Austin (“Mrs. Austin”),

 the person who had allegedly written the check. Mrs. Austin informed Mr. Berry that

 she did not write a check to Defendant and did not, in fact, know Defendant. Mrs.

 Austin did, however, write the check to the utility company for the Town of Long View

 and deposited it in her mailbox. Before the mailman could retrieve the utility

 payment, a vehicle drove up to Mrs. Austin’s mailbox and removed the check.

¶4 After speaking with Mrs. Austin, Mr. Berry raised his concerns to his

 supervisor. At that time, the car Defendant was in drove away. Following the

 incident, SECU employees contacted the sheriff’s department and provided officers

 with the original check, Defendant’s driver’s license, and his social security card that
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 had been deposited through the SECU tube system.

¶5 On 16 April 2018, a grand jury indicted Defendant for uttering a forged

 instrument. The case was later tried on 18 February 2020, before the Honorable

 Judge Steven Warren in Burke County Superior Court. During the trial, Detective

 Burton Wilbur (“Detective Wilbur”) of the Burke County Sheriff’s Office testified

 regarding the chain of custody of Defendant’s driver’s license and social security card,

 and the check presented to Mr. Berry. Mrs. Austin’s husband also testified,

 confirming that he did not write a check to Defendant.

¶6 At the close of the State’s evidence, Defendant moved to dismiss the charge of

 uttering a forged instrument for the State’s failure to present sufficient evidence that

 Defendant was the perpetrator of the alleged offense. The court denied Defendant’s

 motion. At the close of all the evidence, Defendant renewed his motion; the court

 denied that motion as well.

¶7 The jury returned a guilty verdict, and on 18 February 2020 Judge Warren

 entered a judgment sentencing Defendant to a term of five to 15 months, suspending

 the sentence, and placing Defendant on supervised probation for 18 months.

¶8 On 20 February 2020, Defendant filed a written notice of appeal.

 II. Analysis

¶9 Defendant contends that the trial court erred in (1) denying Defendant’s

 motion to dismiss for failure to present sufficient evidence that Defendant was the
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 perpetrator and (2) ordering attorney’s fees without affording Defendant the

 opportunity to be heard. We address each issue in turn.

 A. Motion to Dismiss

¶ 10 A defendant’s motion to dismiss should be denied if “there is substantial

 evidence (1) of each essential element of the offense charged, or of a lesser offense

 included therein, and (2) of [the] defendant[ ] being the perpetrator of such offense.”

 State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted).

 Substantial evidence is defined as “such relevant evidence as a reasonable mind

 might accept as adequate to support a conclusion.” State v. Smith, 300 N.C. 71, 78-

 79, 265 S.E.2d 164, 169 (1980) (citations omitted). We review a trial court’s denial of

 a motion to dismiss de novo. State v. Sanders, 208 N.C. App. 142, 144, 701 S.E.2d

 380, 382 (2010).

¶ 11 “The essential elements of the crime of uttering a forged check are (1) the offer

 of a forged check to another, (2) with knowledge that the check is false, and (3) with

 the intent to defraud or injure another.” State v. Hill, 31 N.C. App. 248, 249, 229

 S.E.2d 810 (1976). Here, Defendant does not challenge whether the offense was

 committed. Instead, Defendant challenges the identity requirement necessary to

 overcome a motion to dismiss—arguing that the trial court erred in denying

 Defendant’s motion to dismiss because the State failed to present sufficient evidence

 that Defendant was the perpetrator.
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

¶ 12 “In reviewing challenges to the sufficiency of evidence, we must view the

 evidence in the light most favorable to the State, giving the State the benefit of all

 reasonable inferences.” Scott, 356 N.C. at 596, 573 S.E.2d at 869 (citation omitted).

 “Moreover, circumstantial evidence may withstand a motion to dismiss and support

 a conviction even when the evidence does not rule out every hypothesis of innocence.”

 State v. Kemmerlin, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002) (internal marks

 and citations omitted). Indeed, “[t]he trial court[,] in considering such motions[,] is

 concerned only with the sufficiency of the evidence to carry the case to the jury and

 not with its weight.” State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). To

 that end, “contradictions and discrepancies are for the jury to resolve and do not

 warrant dismissal.” Id.

¶ 13 Defendant was charged with uttering a forged instrument. During trial, the

 State offered the following as evidence that Defendant committed the offense: (1)

 Defendant’s driver’s license and social security card, which was furnished to Mr.

 Berry at the SECU drive-through; (2) testimony from Detective Wilbur, confirming

 the chain of custody to verify that the jury was presented with the same items that

 were furnished to Mr. Berry on 3 May 2017; and (3) testimony from Mr. Berry that

 he confirmed that the person in the drive-through lane matched Defendant’s driver’s

 license.

¶ 14 Taken in the light most favorable to the State and drawing all reasonable
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 inferences in favor of the State, the evidence showed that Defendant’s driver’s license

 and social security card were given to Mr. Berry along with a forged instrument, in

 the form of a check. Upon receiving the identifying documents, Mr. Berry utilized

 the driver’s license, which indisputably belongs to Defendant, to confirm that the

 person in the SECU drive-through matched the person who provided him with the

 license. During trial, Mr. Berry also confirmed that the individual in the rear seat of

 the car was clearly visible and within 10 to 12 feet of him when he compared the

 photograph on the license to the individual in the car—matching Defendant to his

 driver’s license. After confirming Defendant was in fact the individual he was dealing

 with, Mr. Berry took notice of the check’s texture, which he described as “real stiff,”

 as if “it had been damp or wet at some point.” Mr. Berry also noticed that the writing

 on the check did not match the signature.

¶ 15 These suspicions prompted Mr. Berry to contact the member who had

 “allegedly” written the check to Defendant. The member, Mrs. Austin, reviewed her

 checkbook and confirmed that the check had been written to a utility company. At

 trial, she testified that the check was taken from her mailbox the day preceding the

 offense. After contacting his supervisor, Mr. Berry testified that the car drove away.

 Thereafter, the sheriff’s office was contacted and provided with the original check and

 Defendant’s driver’s license and social security card. Detective Wilbur confirmed the

 chain of custody of Defendant’s driver’s license and social security card to ensure that
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 the jury received the same documents that Mr. Berry received on 3 May 2017.

¶ 16 Defendant contends that these facts are similar to State v. Bass, 303 N.C. 267,

 272, 278 S.E.2d 209, 212 (1981), in which our Supreme Court held that fingerprint

 evidence is insufficient when the State has failed to present substantial evidence of

 circumstances from which the jury could find that the fingerprints could only have

 been impressed at the time the crime was committed. This case, however, is

 distinguishable from Bass for several reasons. In fingerprint cases, the State has an

 added burden because a person’s fingerprints can remain on a surface for long periods

 of time. See, e.g., id. at 270, 278 S.E.2d at 212 (“An expert in the field of fingerprint

 analysis found eleven points of similarity between the latent print on the screen and

 the known inked impressions of defendant’s prints. The State’s witnesses testified

 that fingerprints can last for months or even years”). Thus, the State must be able

 to link the fingerprint evidence to the crime. Here, Defendant’s driver’s license was

 provided to Mr. Berry, who confirmed that the license matched the person who

 provided it to him, while committing the underlying offense. Thus, Defendant’s

 identification documents were not simply left in a place for any reason other than

 Defendant’s commission of the crime. Moreover, there is no indication that

 Defendant left his driver’s license or social security card on any other day or time

 than when the underlying offense was committed as confirmed by Detective Wilbur’s

 testimony.
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

¶ 17 Thus, considering all evidence in the light most favorable to the State, we

 conclude that a reasonable jury could have found as fact that Defendant was the

 perpetrator. Perhaps the strongest evidence introduced against Defendant was

 Defendant’s driver’s license and social security cards—documents that are generally

 (1) kept on one’s person and (2) used as key identification documents—which were

 presented to Mr. Berry, who confirmed that the driver’s license, containing a picture

 of Defendant, matched that of the individual in the car that sat approximately 10 to

 12 feet from Mr. Berry. Moreover, the court was without evidence refuting

 Defendant’s presence at SECU, including any evidence supporting Defendant’s claim

 that his license and social security card were stolen.

¶ 18 Accordingly, we conclude that there was sufficient evidence to raise a jury

 question regarding Defendant being the perpetrator of the offense.

 B. Attorney’s Fees

¶ 19 Defendant also argues that the trial court erred in ordering payment of

 attorney’s fees without affording Defendant the opportunity to be heard. We

 disagree.

¶ 20 Generally, “[a] challenge to a trial court’s decision to impose a condition of

 probation is reviewed on appeal using an abuse of discretion standard of review.”

 State v. Allah, 231 N.C. App. 88, 98, 750 S.E.2d 903, 911 (2013). However, “[a]

 number of conditions of probation are automatically included in each probationary
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 judgment unless the trial court specifically elects to exempt the defendant from the

 necessity for compliance with one or more of those conditions.” Id. at 97, 750 S.E.2d

 at 911. For example, N.C. Gen. Stat. § 15A-1343 provides that “as [a] regular

 condition[ ] of probation, a defendant must . . . [p]ay the State of North Carolina for

 the costs of appointed counsel, public defender, or appellate defender to represent

 him in the case(s) for which he was placed on probation.” N.C. Gen. Stat. § 15A-

 1343(b)(10) (2019) (emphasis added). Thus, § 15A-1343(b)(10) mandates that a

 defendant released on probation pay for the costs of appointed counsel.

¶ 21 There is, however, an exception to the mandate. Specifically, N.C. Gen. Stat.

 § 15A-1343(e) provides that any person placed on probation is required to pay all costs

 for court appointed counsel, “[u]nless the court finds there are extenuating

 circumstances[.]” N.C. Gen. Stat. § 15A-1343(e) (2019). When attorney’s fees are

 required, the amount “shall be determined in accordance with rules adopted by the

 Office of Indigent Defense Services. The court shall determine the amount of those

 costs and fees to be repaid and the method of payment.” Id.

¶ 22 Here, as a condition of probation, Defendant was ordered to pay $1,680 for the

 cost of attorney’s fees. This number was based on testimony from Defendant’s

 appointed counsel that he had spent 28 hours on the case. At the time of judgment,

 the rate paid to counsel assigned to represent an indigent defendant charged with a
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 Class I felony in Superior Court was $60 an hour.1 Thus, Defendant’s attorney’s fee

 costs, calculated in compliance with N.C. Gen. Stat. § 15A-1343(e), totaled $1,680.

¶ 23 Defendant contends that the court should have afforded him an opportunity to

 be heard before ordering the payment of attorney’s fees. This argument, however, is

 misplaced. Indeed, this Court has only required notice and an opportunity to be heard

 when the court has imposed a civil judgment against an indigent defendant for

 attorney’s fees, pursuant to N.C. Gen. Stat. § 455(b). See, e.g., State v. Jacobs, 172

 N.C. App. 220, 235, 616 S.E.2d 306, 316 (2005) (recognizing that “N.C. Gen. Stat.

 § 7A-455 (2003) provides that the trial court may enter a civil judgment against a

 convicted indigent defendant for the amount of fees incurred by the defendant’s court-

 appointed attorney”); State v. Friend, 257 N.C. App. 516, 523 809 S.E.2d 902, 907

 (2018) (finding that the trial court erred by entering a civil judgment against the

 defendant, because he was not informed of his right to be heard before the court

 entered the judgment).

¶ 24 Here, the trial court did not enter a civil judgment to recoup attorney’s fees

 pursuant to N.C. Gen. Stat. § 455(b), but instead, imposed a condition that is

 automatically included in each probationary judgment. See N.C. Gen. Stat. § 15A-

 1 The hourly assigned counsel rate for Class E-I felony cases in the superior court,

 with a final disposition of or after 1 December 2018, is $60. Counsel Rates, Office of Indigent
 Defense Services, https://www.ncids.org/counsel-rates/.
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

 1343(b)(10) (2019) (“As a regular condition of probation, a defendant must . . . [p]ay

 the State of North Carolina for the costs of appointed counsel, public defender, or

 appellate defender to represent him in the cases for which he was placed on

 probation.”). Therefore, the court was not required to engage in the colloquy under

 Jacobs and Friend, and the trial court’s decision must stand unless this Court finds

 that the trial court abused its discretion. Allah, 231 N.C. App. at 98, 750 S.E.2d at

 911.

¶ 25 Accordingly, we find that the trial court did not abuse its discretion in ordering

 that Defendant pay the costs of attorney’s fees. Not only was the requirement a

 regular condition of probation, authorized by N.C. Gen. Stat. § 15A-1343(b)(10), but

 the court correctly calculated the fee based on rates provided by the Office of Indigent

 Defense Services, as mandated by N.C. Gen. Stat. § 15A-1343(e).

 III. Conclusion

¶ 26 For the reasons stated above, we hold that there was substantial evidence that

 Defendant was the perpetrator of the alleged offense. Thus, the trial court properly

 denied Defendant’s motion to dismiss the charge of uttering a forged instrument. We

 further hold that the trial court did not abuse its discretion in ordering the payment

 of attorney’s fees. Accordingly, Defendant has failed to demonstrate any error

 occurred during his trial.
 STATE V. GIBSON

 2021-NCCOA-308

 Opinion of the Court

NO ERROR.

Judges DIETZ and COLLINS concur.